UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ESTEBAN HERNAIZ,
*Plaintiff,*

v.                                                    No. 3:24-cv-116 (JAM)

JOHN CARLSON *et al*,
*Defendants*.

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C § 1915A

Plaintiff Esteban Hernaiz is an unsentenced prisoner in the custody of the Connecticut

Department of Correction ("DOC").[1] He has filed this complaint *pro se* and *in forma pauperis*

under 42 U.S.C. § 1983, alleging that over a dozen defendants violated his rights under the U.S.

Constitution, Connecticut Constitution, and Connecticut state law.[2] The Court issues this initial

review order pursuant to 28 U.S.C. § 1915A, allowing two claims to proceed against some of the

police officer defendants and dismissing all other claims and defendants.

### BACKGROUND

I draw the following facts from the allegations in Hernaiz's complaint, accepting them as

true only for the purposes of this ruling.

Hernaiz's claims stem from his 2021 arrest and related 2023 trial. They implicate one or

more of the officials involved at each stage in those proceedings, beginning with the arresting

officers. Specifically, Hernaiz claims that Cromwell Police Officers John Carlson, William

---

[1] The Court may judicially notice a fact "that is not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Accordingly, I take notice of records on the Connecticut DOC website indicating that Hernaiz was last admitted to DOC on November 10, 2021, and is an unsentenced inmate located at New Haven Correctional Center. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=267849 (last visited May 7, 2024).

[2] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial-screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If the screening reveals that there are facially plausible federal law claims, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment.

Kogut, Mitchell Brooks, and Ryan Bengston "conspired" to falsely arrest him.[3] This was

intended as retaliation after Hernaiz filed a citizen's complaint against them in which he alleged

harassment and racial profiling.[4] According to Hernaiz, these officers had previously harassed

him on five or six separate occasions in August 2021 "because [Hernaiz] was Puerto Rican and

[his] girlfriend was [W]hite."[5] During those incidents, the four officers would accuse Hernaiz of

assault or, if his girlfriend was present, ask her whether Hernaiz assaulted her and pressure her to

claim that he had, with the assurance that "her name would be redacted on the affidavit."[6] On the

fifth or sixth such occasion, Hernaiz told the officers that he planned to file a citizen's complaint

against them.[7]

He filed the complaint between August and September 2021, at which point "all [his]

troubles began."[8] First, Captain Penn of the Cromwell Police Department "stated that the racial

profiling, harassment, and false arrest were unsubstantiated," which Hernaiz alleges signified

Penn's "endors[ement]" of the officers' actions.[9] Next, Carlson "draft[ed] a bogus arrest

warrant" for third degree assault and second degree breach of the peace.[10] He falsely stated in the

warrant application that Hernaiz had had "issues in the past" with the alleged victim (Hernaiz's

girlfriend) and that he performed a welfare check on the couple at Walmart, where he saw the

victim with a lump on the left side of her temple.[11] According to Hernaiz, there was no such

---

[3] Doc. #1 at 13 (¶¶ 2-3).
[4] *Id.* at 13 (¶¶ 2-3).
[5] *Id.* at 13 (¶¶ 4-5), 15 (¶¶ 15-18), 17 (¶ 25).
[6] *Id.* at 13 (¶ 6), 17 (¶¶ 27-28).
[7] *Id.* at 15 (¶¶ 17-18)
[8] *Id.* at 16 (¶ 19). Elsewhere, Hernaiz alleges that he filed the complaint in July 2021. *See id.* at 13 (¶ 2). But given his claim that he filed it in response to racially motivated harassment that occurred in August 2021, the Court construes the July statement as a mistake and credits instead Hernaiz's claim that he filed the complaint in August.
[9] *Id.* at 18 (¶ 29).
[10] *Id.* at 14 (¶ 7). Hernaiz states he was charged with "BOP," which the Court understands to mean "breach of peace."
[11] *Id.* at 14 (¶ 9), 17 (¶ 24).

lump, and Carlson actually approached Hernaiz at 45 Shunpike Road, not Walmart.[12] Carlson also forwarded false information about Hernaiz to a state's attorney.[13]

Officers Kogut, Brooks, and Bengston, as well as Officers Alassiri and Sanchez-Figueroa, and Assistant State's Attorney Cooper "signed off on this bogus arrest warrant filled with lies, no witness statements, and no evidence of physical injury to [the] alleged victim."[14] They also assisted Carlson in carrying out Hernaiz's arrest on October 7, 2021.[15]

In February 2023, Hernaiz filed a speedy trial motion and another defendant, Judge Oliver, denied it.[16] Judge Oliver also would not permit Hernaiz to proceed *pro se* after Hernaiz fired his lawyer.[17] That same month, another defendant, Judge Dwey, brought Hernaiz "back to the pretrial docket" when Hernaiz stated he wanted to represent himself.[18] Judge Dwey also denied his motion for a change of venue.[19]

Hernaiz was tried before a jury on the assault and breach of peace charges in August 2023.[20] During the trial, Carlson allegedly lied on the witness stand, once again claiming that he performed a wellness check at the Walmart Plaza, where he saw a lump on Hernaiz's girlfriend's head.[21]

Hernaiz next claims that the assistant state's attorney who prosecuted the case, Jason Germain, did so without probable cause and even "stated on the record 'I have nothing to convict this man with.'"[22] Hernaiz also brings a slew of claims related to the way Germain prosecuted

---

[12] *Id.* at 14 (¶¶ 10-11).
[13] *Id.* at 14 (¶ 8).
[14] *Id.* at 16 (¶ 22).
[15] *Id.* at 16 (¶ 23), 19 (¶ 34).
[16] *Id.* at 23 (¶ 55).
[17] *Ibid.*
[18] *Id.* at 23 (¶ 56).
[19] *Ibid.*
[20] *Id.* at 14 (¶ 8), 20 (¶ 43), 21 (¶ 52).
[21] *Id.* at 14 (¶¶ 10-11).
[22] *Id.* at 19 (¶ 38), 20-21 (¶ 46).

the case, including "enhanc[ing]" a charge to punish Hernaiz for refusing to plead guilty; calling

an expert witness without "giving the [d]efense a chance" to do the same; "promoting the

perjury" of several witnesses; introducing a prejudicial video of Hernaiz; asking leading

questions of witnesses; refusing to charge the alleged victim with perjury and filing a false police

report; continuing to refer to the alleged victim as a "victim" rather than by her initials; and

withholding exculpatory medical records of the alleged victim.[23] Hernaiz also claims that

Germain "violated his own rules of conduct" by repeatedly asking the same question "with

anger," "by being bias[ed] and prejudice[d]," and by "not telling the defense that the state paid

for [d]efendant's [e]xpert testimony."[24]

Similarly, Hernaiz claims that Judge Leaming violated his constitutional rights through a

series of rulings she made during the course of the trial, including allowing Germain to apply the

"enhancement" noted above; not allowing the jury to review the arrest warrant; allowing a

prejudicial video of Hernaiz; permitting the state to introduce expert testimony; and allowing

certain witnesses to testify "when there was no signed written statements, no evidence, no

descriptions, or identification."[25]

Hernaiz also claims that Germain and Judge Leaming were "in cahoots," as evidenced by

her rulings in favor of the state and against the defense, and that Leaming violated Hernaiz's

rights by refusing to recuse herself in light of the "influence" Germain had over her.[26]

Finally, Hernaiz claims that an EMT named Depaolo—who testified as to the injuries he

saw on the alleged victim—lied on the stand, thereby violating Hernaiz's right to a fair trial.[27]

---

[23] *Id.* at 19 (¶ 39), 20 (¶¶ 40-42, 44-45), 21 (¶ 47), 22 (¶ 53).
[24] *Id.* at 21 (¶¶ 48-49), 26 (¶ 66).
[25] *Id.* at 24 (¶¶ 58-59, 61), 25 (¶ 62), 26 (¶ 66).
[26] *Id.* at 24 (¶ 60), 25-26 (¶ 65).
[27] *Id.* at 27 (¶ 67).

At the conclusion of the trial, Hernaiz was acquitted of the assault and breach of peace charges.[28]

Hernaiz is currently incarcerated on unrelated charges. He claims that officers Carlson, Kogut, Bengston, Brooks, Alassiri, and Sanchez-Figueroa; state's attorneys Germain and Cooper; Judge Leaming; and EMT Depaolo violated his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.[29] He brings Fifth, Sixth, and Fourteenth Amendment claims against Judges Oliver and Dwey.[30] He also claims that Denise Lamontagne and Fred Sifodaskalakis, chiefs of police, as well as Mayor Duane Adamson, violated his constitutional rights by failing to train and supervise their subordinates.[31] Finally, he brings Connecticut Constitution and state law claims against some defendants. All claims are brought against defendants in their individual capacities.

Hernaiz seeks compensatory and punitive damages and court costs and fees. He also asks the Court to waive all costs of incarceration and grant a protective order against all defendants.

### DISCUSSION

The Court is required by law to conduct an initial review of prisoner civil complaints and to dismiss any portion of such complaints that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must construe the allegations liberally, interpreting them to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[32] Still,

---

[28] *Id.* at 21 (¶ 52).

[29] *Id.* at 28 (¶¶ 1-3), 29 (¶ 5). He also brings these claims against someone named Parsons, but neglects to allege any facts involving this person. Accordingly, any claims against Parsons fail.

[30] *Id.* at 29 (¶ 4).

[31] *Id.* at 29 (¶ 6), 30 (¶ 7).

[32] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

however, a *pro se* complaint must allege enough facts—as distinct from legal conclusions—to establish plausible grounds for relief. *See ibid.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### Fifth Amendment

Hernaiz claims that all of the defendants violated his rights under the Fifth Amendment. But the Fifth Amendment "regulates due process violations by federal, not state or municipal, actors." *Pollok v. Chen*, 806 F. App'x 40, 44 (2d Cir. 2020) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). I will therefore dismiss Hernaiz's Fifth Amendment claims against all defendants, none of whom are federal officials, pursuant to 28 U.S.C. § 1915A(b)(1).

### Police Officer defendants

Hernaiz brings Fourth, Sixth, Eighth, and Fourteenth Amendment claims against officers Carlson, Kogut, Bengston, Brooks, Alassiri, and Sanchez-Figueroa. The factual allegations of his complaint also suggest a First Amendment retaliation claim, which I will address first.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024) (quoting *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (*per curiam*)). But in the case of an allegedly retaliatory arrest, "the existence of probable cause [for the arrest] is a complete defense." *Golodner v. City of New London*, 443 F. App'x 622, 624 (2d Cir. 2011); *see Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015) ("The existence of probable cause will defeat a First Amendment claim

that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence him.").

Hernaiz has pled all three elements of a retaliation claim. Filing a citizen's complaint against a police officer is a protected activity under the First Amendment. *See Williams v. Hartford Police Dep't*, 2017 WL 11448157, at *13 (D. Conn. 2017). Hernaiz has also pled causation against four officers, alleging that Carlson, Kogut, Bengston, and Brooks planned and executed his arrest in response to his having filed a citizen's complaint against them. *See Vincent v. Winski*, 2018 WL 1441370, at *13-14 (S.D.N.Y. 2018) (denying motion to dismiss retaliation claim where plaintiff had alleged that defendants arrested him due to his participation in a protest). Finally, Hernaiz's allegation that he was arrested and criminally charged supports a claim of concrete injury. *See Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 382 (S.D.N.Y. 2015) ("[Plaintiff] has satisfied the third element by pleading that the defendants arrested him and charged him.").

Hernaiz has also alleged that the officers based their arrest warrant application on falsehoods. He disputes key assertions in the application, including that he had ever had "issues" with the alleged victim or that there was any indication of physical injury to her. These facts, taken as true, support a claim that the officers lacked probable cause. *See Moore v. Meehan*, 2010 WL 841007, at *4-5 (N.D.N.Y. 2010) (holding that plaintiff had alleged facts indicating a lack of probable cause where he pled that defendant officers "improperly grabbed Plaintiff, injured him without any justification, and then falsely arrested him").

Thus, Hernaiz has adequately alleged a claim for First Amendment retaliation against Carlson, Kogut, Bengston, and Brooks. However, he has failed to show causation as to Alassiri and Sanchez-Figueroa because he has not alleged that he filed the complaint against them, nor

7

pled facts suggesting they even knew of its existence. I will allow the First Amendment claim to proceed against Carlson, Kogut, Bengston, and Brooks, but dismiss it as to Alassiri and Sanchez-Figueroa.

Hernaiz next alleges that the officers subjected him to a false arrest in violation of the Fourth and Fourteenth Amendments. But only the Fourth Amendment claim is operative. Hernaiz's Fourteenth Amendment due process claim "merges with his Fourth Amendment claim because the former claim arises from the same set of actions that allegedly violated his Fourth Amendment rights." *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008). This is because "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of [Fourteenth Amendment] substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Claims for false arrest fall under the Fourth Amendment's protection against unlawful seizures. *See Tyus v. Newton*, 2016 WL 6090719, at *7 (D. Conn. 2016). Therefore, I will dismiss Hernaiz's Fourteenth Amendment due process claim.

Analyzing the substance of his false arrest allegations, I find that he has stated a claim. "Claims for false arrest brought under Section 1983 are 'substantially the same' as claims for false arrest under state law." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)). Connecticut law requires a plaintiff claiming false arrest to show that "(1) the defendant arrested plaintiff or had plaintiff arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." *Harris v. Doe*, 2024 WL 1344697, at *2 (D. Conn. 2024). Additionally, "claims for false arrest and malicious prosecution require a plaintiff

to prove that there was a favorable termination of the proceedings against [him]." *Callahan v. City of New Haven*, 2023 WL 1992620, at \*6 (D. Conn. 2023). "A favorable termination means that a plaintiff must show that [his] prosecution ended without a conviction." *Ibid.*

Hernaiz alleges that Officers Carlson, Kogut, Bengston, Brooks, Alassiri, and Sanchez-Figueroa arrested him. The facts pled also clearly indicate his awareness of and lack of consent to the arrest. Finally, Hernaiz alleges a favorable termination: acquittal. Accordingly, I will allow his false arrest claim against these six officers to proceed.

Hernaiz next claims that the officers violated his Sixth Amendment rights. The Sixth Amendment guarantees criminal defendants the right to a speedy and public trial, to knowledge of the allegations against them, to the ability to confront and obtain witnesses, and to the assistance of counsel. There are no factual allegations in the complaint indicating that the police officer defendants violated any of these rights. Therefore, I will dismiss Hernaiz's Sixth Amendment claims pursuant to 28 U.S.C. § 1915A(b)(1).

Hernaiz also alleges that the officers violated his Eighth Amendment rights. "But because [he] was not a convicted prisoner at the time of the events at issue, he has not plausibly alleged any claim under the Eighth Amendment for cruel and unusual punishment." *Febus v. Somody*, 2019 WL 1763093, at \*4 (D. Conn. 2019); *see Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Finally, Hernaiz claims that Captain Penn violated his rights, but alleges only that the captain declined to credit his citizen's complaint. Because there is no constitutional right to a favorable outcome of such a complaint, I will dismiss Hernaiz's claims against Captain Penn under 28 U.S.C. § 1915A(b)(1).

### *Judge Oliver, Judge Dwey, and Judge Leaming*

Hernaiz's claims against Judges Oliver, Dwey, and Leaming all stem from these officials'

conduct during judicial proceedings. "'It is well settled that judges generally have absolute

immunity from suits for money damages for their judicial actions,' whether they are sued in their

individual or official capacities." *Owens v. Conn.*, 2024 WL 1576779, at *3 (D. Conn. 2024)

(quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "[E]ven allegations of bad faith or

malice cannot overcome judicial immunity." *Ibid.* (quoting *Bliven*, 579 F.3d at 209). "Further,

injunctive relief is unavailable 'in any action brought under § 1983 against a judicial officer for

an act or omission taken in such officer's judicial capacity unless a declaratory decree was

violated or declaratory relief unavailable.'" *Szymonik v. Conn.*, 2019 WL 203117, at *7 (D.

Conn. 2019) (quoting 42 U.S.C. § 1983). "A judge is not entitled to absolute immunity, however,

for nonjudicial actions or 'actions not taken in the judge's judicial capacity' such as

administrative decisions." *Conley v. Alexander*, 2020 WL 1514834, at *4 (D. Conn. 2020)

(quoting *Bliven*, 579 F.3d at 209-10).

All of Hernaiz's allegations against the judges pertain to actions they took in their

capacity as judges presiding over criminal proceedings. "Absent any allegations that [they]

engaged in actions that were not judicial in nature or that were taken in the absence of all

jurisdiction, [these defendants are] entitled to absolute immunity from suit in presiding over

[Hernaiz's] criminal case." *Conley*, 2020 WL 1514834, at *5. Accordingly, I will dismiss all of

Hernaiz's claims against the judges pursuant to 28 U.S.C. § 1915A(b)(2).

### *State's attorney defendants*

As with the state-judge defendants, Hernaiz's claims against Assistant State's Attorney

Germain arise from Germain's conduct during the criminal proceeding. But "acts by a prosecutor

that are 'intimately associated with the judicial phase of the criminal process' are shielded by absolute immunity." *McCray v. Patrolman N.A. Caparco*, 761 F. App'x 27, 32 (2d Cir. 2019) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). All of Hernaiz's allegations against Germain pertain to his presentation of the state's case during Hernaiz's trial, rendering Germain immune from suit. *See Schlosser v. Kwak*, 2020 WL 4003502, at *4 (D. Conn. 2020) ("Because the [alleged] actions amounted to 'conduct in furtherance of prosecutorial functions that are intimately associated with initiating or presenting the State's case,' the prosecutor defendants are immune from suit.") (quoting *Flagler v. Trainor*, 663 F.3d 543, 546 (2d Cir. 2011)).

Accordingly, I will dismiss the claims against Germain per 28 U.S.C. § 1915A(b)(2) for seeking relief from a defendant who is immune.

As for Assistant State's Attorney Cooper, Hernaiz alleges that Cooper "signed off" on the allegedly bogus arrest warrant.[33] But "an assistant state's attorney in Connecticut has absolute immunity for [his] conduct as it pertains to [his] decision to sign an arrest warrant." *Perugini v. City of Bristol*, 2019 WL 4193421, at *4 (D. Conn. 2019); *see Figueroa v. Town of North Haven*, 2017 WL 6045421, at *4 (D. Conn. 2017) ("Because [the assistant state's attorney] acted as an advocate for the State in applying for an arrest warrant, he is absolutely immune from suit.")

To be sure, not every conceivable action a prosecutor might take to obtain a warrant is entitled to immunity. For example, "[a]bsolute immunity does not apply when a prosecutor acts as a complaining witness in support of a warrant application." *Harvey v. Town of Greenwich*, 2019 WL 1440385, at *5 (D. Conn. 2019). But Hernaiz does not allege that Cooper furnished any of the allegedly false statements in the warrant, nor that he "personally vouched for the truth of the facts set forth in the arrest warrant application." *Figueroa*, 2017 WL 6045421, at *3. The

---

[33] *Id.* at 16 (¶ 22).

complaint states that Cooper "signed off" on the warrant. In doing so, he was "acting in [his] core court-related role within the meaning of *Imbler*" and is entitled to immunity. *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987).

To the extent Hernaiz advances a false arrest claim against Cooper, it fails for the same reason. *See Palmer v. Monroe Cnty. Deputy Sheriff*, 2004 WL 941784, at *8 (W.D.N.Y. 2004) ("[A] prosecutor is entitled to absolute immunity against a claim for false arrest."); *Goncalves v. Reynolds*, 198 F. Supp. 2d 278, 282 (W.D.N.Y. 2001) ("The decision to file a criminal complaint and seek issuance of an arrest warrant are quasi-judicial duties involved in initiating a prosecution. As such they are protected under *Imbler*, for securing the person of the defendant is part of initiating a prosecution and should be insulated.").

Therefore, I will dismiss Hernaiz's claims against Cooper under 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from a defendant who is immune.

Nor can the actions against Germain and Cooper survive on the basis of Hernaiz's claim for injunctive relief. Although neither is immune from a claim for prospective injunctive relief, *Peoples v. Margulis*, 2023 WL 7283732, at *3 (E.D.N.Y. 2023), Hernaiz must still establish standing, which in turn requires a showing of injury. A plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [he] will be injured in the future." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). "Such an allegation of future injury will be sufficient only if the threatened injury is certainly impending, or there is substantial risk that the harm will occur." *Dorce*, 2 F.4th at 95.

Hernaiz has alleged no actionable constitutional violation by Germain or Cooper that is reasonably likely to occur in the future, and thus he lacks standing. *See Li v. Lorenzo*, 712 F.

App'x 21, 23 (2d Cir. 2017) ("[Plaintiff's] disciplinary proceedings have ended, however, and he

alleged injuries stemming only from past conduct with no plausible threat of future violations.

The relief [plaintiff] seeks is therefore not prospective.").

### EMT Depaolo

Hernaiz claims that EMT Depaolo lied on the witness stand during his trial, thereby

violating Hernaiz's rights under the Fourth, Sixth, Eighth, and Fourteenth Amendments. Even if

Depaolo's conduct could be attributed to the state, thereby providing for § 1983 liability,

Hernaiz's claims are "barred by witness immunity, which prevents civil suits against individuals

for damages arising from statements made about the subject matter of the controversy in a

judicial proceeding." *Sprecher v. Graber*, 716 F.2d 968, 975 (2d Cir. 1983); *see Alaimo v. Gen.

Motors Corp.*, 2008 WL 4695026, at *2 (S.D.N.Y. 2008) ("Plaintiffs' claims based on

allegations of perjury during the prior state court proceeding are not actionable [because]

statements made during judicial proceedings are absolutely privileged.").

As for Hernaiz's claim for injunctive relief, the same reasoning that precludes such relief

against the state-attorney defendants applies here. Hernaiz has alleged no facts suggesting that

Depaolo is likely to testify in a criminal proceeding against him in the future, and thus he has no

standing to seek relief.

Accordingly, I will dismiss the claims against Depaolo pursuant to 28 U.S.C. §

1915A(b)(1)-(2) for failing to state a claim and for seeking relief from a defendant who is

immune. Any other claim that seeks to hold a witness liable for lying during their court

testimony would also be precluded by the doctrine of witness immunity.

*Supervisory liability*

Hernaiz next alleges that defendants Lamontagne and Sifodaskalakis "failed to train and supervise their subordinates Kogut, Carlson, Brooks, Allasiri . . . and Penn," and that these defendants' "acts and omissions caused [Hernaiz] emotional distress."[34]  Similarly, his claims against Mayor Duane Adamson rest on the fact that, during the course of the events in the complaint, Adamson "was the mayor of Cromwell and failed to train and supervise his subordinates," thereby causing Hernaiz "emotional distress."[35]

These claims fail because supervisors are not automatically liable for constitutional violations committed by lower-level employees. Instead, § 1983 requires Hernaiz to "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "[T]here is no special rule for supervisory liability." *Ibid.*

Nor does the analysis change under a failure-to-train theory. "Absent evidence of [a supervisor's] personal involvement in the underlying claims . . . a failure to train or supervise does not state a cognizable claim for supervisory liability" in the § 1983 context. *Sellers v. Andrea*, 2022 WL 17830715, at *4 (D. Conn. 2022) (collecting cases). Hernaiz has not alleged facts suggesting any personal involvement at all by Lamontagne, Sifodaskalakis, or Adamson, so he has failed to state a claim against any of them.

**CONCLUSION**

In accordance with the foregoing analysis, the Court enters the following orders:

1. The following claims against the following defendants may proceed: Hernaiz's First Amendment retaliation claim against Officers Carlson, Kogut, Bengston, and Brooks, in their

---

[34] *Id.* at 29 (¶ 6).
[35] *Id.* at 30 (¶ 7).

14

individual capacities only; and Hernaiz's Fourth Amendment claim for false arrest against

Officers Carlson, Kogut, Bengston, Brooks, Alassiri, and Sanchez-Figueroa, in their individual

capacities only.

2. All other claims and defendants are DISMISSED without prejudice to Hernaiz's filing

of an amended complaint within thirty (30) days if he has good faith grounds to allege additional

facts that overcome the grounds stated in this ruling for dismissing his claims.

3. Within twenty-one (21) days of this Order, the Clerk shall ascertain the current work

addresses for Officers Carlson, Kogut, Bengston, Brooks, Alassiri, and Sanchez-Figueroa and

mail a waiver of service of process request packet to each defendant in his or her individual

capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk

shall report to the Court on the status of all the requests. If any defendant fails to return the

waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals

Service and the defendant shall be required to pay the costs of such service in accordance with

Federal Rule of Civil Procedure 4(d).

4. Defendants shall file their response to the complaint, either an answer or motion to

dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of

summons forms are mailed to them. If the defendants choose to file an answer, they shall admit

or deny the allegations and respond to the cognizable claims recited above. This initial review

order has been issued *sua sponte* in accordance with 28 U.S.C. § 1915A and is without prejudice

to the right of any defendant to seek relief by way of any motion pursuant to Rule 12 of the

Federal Rules of Civil Procedure or other pleadings-level relief.

5. Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

6. All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

7. If Hernaiz changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Hernaiz must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

8. Hernaiz shall utilize the Prisoner E-Filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 9th day of May 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge